# Nick Barneclo, Ph.D.
*Licensed Psychologist*
330 North Campo Street   Las Cruces, NM 88001
Cell Phone: (575) 650-0843   Office Phone (575) 541-1110   Fax (575) 541-1113

# FORENSIC PSYCHOLOGICAL AND COGNITIVE EVALUATION

## (CONFIDENTIAL)

*This report is confidential, and unless its release is in accord with the rules of criminal or civil procedure, it should not be released to anyone without written consent of the defendant. While the defendant does have a right to see this report, it is strongly recommended that he/she do so in the presence of the evaluator so that the findings and results can be properly interpreted and any questions or concerns can be addressed. If the report is given to the defendant by anyone other than a psychologist, it is highly likely that he/she can misunderstand the report's content.*

## IDENTIFYING INFORMATION:

DEFENDANT: Pawan Kumar Jain
DOB: August 8, 1953               AGE: 63
CAUSE NO: CR-2014-1261, CHARGE: Unlawful Dispensing of a Controlled Substance Resulting in Death, Health Care Fraud Resulting in Death, Unlawful Dispensing of a Controlled Substance, Health Care Fraud
REFERRED BY: Jeffrey Grass, Attorney for the Defendant
COURT: United States District Court for the District of New Mexico
PLACE OF EVALUATION: Dona Ana County Detention Center
EVALUATION CONDUCTED BY: Nick Barneclo, Ph.D.
DATE(S) OF EVALUATION: November 11, December 10, and December 12, 2014
SOURCES OF INFORMATION:
    Clinical Interview
    Psychological and Competency Testing
    Examination of records from:
    Dona Ana County Detention Center Medical Notes
    Order on Defendant's Motion for Psychiatric Examination
    Defendant's Motion for Psychiatric Examination
    Interviews with Anna Philip, ex-wife, and Samar Jain, son

## REASON FOR REFERRAL
Mr. Jain was referred for a forensic psychological evaluation by Jeffrey Grass, Attorney for the Defendant, in order to determine the diagnosis, prognosis, capacity to understand the nature and consequences of the proceedings against him or to assist properly in his defense, criminally responsibility for the offense, and recommendations regarding how Mr. Jain's mental condition affects any sentence he might receive. The evaluation was

ordered by the Honorable Judge Robert C Brack, US Magistrate Judge of the United States District Court for the District of New Mexico.

According to the Defendant's Motion for Psychiatric Evaluation, Mr. Jain was interviewed on seven occasions by defense counsel, and Mr. Grass has listened to recorded conversations between Mr. Jain and his wife and son. The attorney observed that Mr. Jain does not appear to understand the legal issues and procedures in his case: "He is unable to comprehend instructions and legal advice given to him; he cannot identify witnesses, recall relevant facts, and will be unable to testify relevantly at trial and be cross examined if necessary." He also observed: "Mr. Jain is unable to understand the possible dispositions, pleas, and penalties available to him and cannot follow discussions with Counsel appraising the likely outcome of his chosen strategies or to make logical decisions after receiving advice."

The motion also indicated that Mr. Jain is diabetic and has stopped adhering to his diet designed to treat his diabetes since 2013. His diet has worsened while in detention. He has been treated by medical staff three times a day for diabetic treatment and to monitor his blood sugars. Mr. Jain was referred for mental health service, but he declined the appointment. Mr. Jeffrey reported concerns of possible delirium, as manifested by hypoglycemic episodes or diabetic ketoacidosis. Symptoms could include: reduced psychomotor activity, disorientation, confusion, perceptual disturbances, thought disturbance, and altered sensorium.

**NOTE**
*The following report and opinions are based on information made available to the evaluator at the time of the evaluation. The evaluator has not made a systematic effort to substantiate the accuracy of the information, unless noted otherwise in this report. The report is based on the assumption that the information provided is reasonably accurate, unless noted to the contrary. The evaluator reserves the right to modify opinions if later provided with additional information relevant to the findings.*

**DISCLOSURE OF LIMITS OF CONFIDENTIALITY**
Prior to the initiation of the evaluation, Mr. Jain was informed about my role as the forensic evaluator, the purpose of the court-ordered evaluation, that his participation was voluntary, and that the information he provided would be shared with his attorney. At his attorney's discretion, the information might also be shared with the Court and the District Attorney. The defendant signed a "Statement of Rights" form, which outlines the information listed above, and he related in his own words that he understood the purpose of the evaluation. The defendant participated in a mental status interview and completed psychological and competency testing. The evaluation was conducted in an adequate environment and the results are believed to represent a valid measure of the defendant's current functioning and status.

**Order on Defendant's Motion for Psychiatric Examination**
The United States District Court ordered that Mr. Jain receive an evaluation to determine:

a. That the psychiatric examination ordered herein be for the purpose of determining whether the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense.
b. That the psychiatric examination ordered herein shall also be for the purpose of determining whether the defendant was insane at the time of the offense charged.
c. Provide opinions as to diagnosis, prognosis, and whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and consequences of the proceedings against him, or to assist properly in his defense,
d. Whether the defendant was insane at the time of the offense charged.
e. Any recommendation the examiner may have as to how the mental condition of the defendant should affect any sentence he may receive.

## CIRCUMSTANCES OF CRIME

Mr. Jain was accused of 2 counts of Unlawful Dispensing of a Controlled Substance Resulting in Death. He was stated to have dispensed methadone outside the usual course of medical practice without legitimate medical purpose resulting in the death of a client on November 25, 2009 and July 27, 2010.

Mr. Jain was accused of 2 counts of Health Care Fraud Resulting in Death, as he reportedly attempted to scheme to submit a fraudulent claim to Medicare for a methadone prescription, which resulted in death.

Mr. Jain was also accused of 56 counts of Unlawful Dispensing of a Controlled Substance for intentionally dispensing a schedule II controlled substance (oxycodone, methadone, Morphine sulfate, and amphetamine/dextroamphetamine). The 49 counts of Health Care Fraud were for scheming to submit claims on the dispensing of such substances. These incidents occurred between 2009 and 2010, and included seven patients.

## BACKGROUND
*Developmental and Family History*
Mr. Jain was born in central India. He indicated that he was raised by his mother and grandfather, as his father worked in central government services and traveled frequently. He reported no concerns with his health, the pregnancy resulting in his birth, or with developmental milestones. He indicated that his family was highly educated, with most of his siblings and grandfather having college training and medical degrees. His father had been in the military, and so his family was disciplined in their studies. Mr. Jain and his siblings competed for high scores in school.

Mr. Jain's mother was a schoolteacher and treated him well. He denied suffering any abuse as a child. He was the oldest of eight siblings, five of whom were brothers and three sisters.

3

*Educational and Work History*
Mr. Jain performed well in school, as he was initially home schooled. By age six he was performing at the sixth grade level, as his mother, the schoolteacher, taught him basic academic skills. He went on to obtain a scholarship to attend college due to his academic abilities, and he attended medical school at 17. He achieved a Bachelor's degree in science.

Mr. Jain attended medical school at a university in Indore, a metropolitan area that now has 1.9 million people. He subsequently moved to Bombay (now known as Mumbai) for a neurosurgery residency. He remained in Mumbai for 3.5 years before moving to work in general surgery for a time to earn money for his father, who had ailing health.

Mr. Jain was selected to attend Vienna University in Europe for neurosurgery, where he remained for 1.5 years, obtaining his diploma. He remained and completed a fellowship in Vienna, before working briefly in Iran in 1984-5, working on victims of the war. He viewed death and dismemberment, but he denied PTSD symptoms or other problems. He returned to India and practiced neurosurgery in India for three years before moving to the US. Mr. Jain reported difficulties finding a school or work in the US, so he moved to London and worked there for one year. He followed this year with a neurology internship in New York for two years, and then he moved to the University of Arkansas in Little Rock. He moved to a vascular dementia program at LSU, and he was a clinical instructor of neurology and research there. After years of teaching, he decided to open a private practice in Las Cruces, New Mexico in 1999.

Mr. Jain pointed out that he has never had disciplinary action in all of his years of service, with the exception of one civil lawsuit, which he successfully defended.

*Relationship History and Current Functioning*
Mr. Jain married in 1980, and he has two children. His son lives in Albuquerque, New Mexico, and his daughter is attending university in New Mexico and having difficulties. His daughter currently lives with his wife, with whom he was recently divorced after his legal problems.

Mr. Jain has recently applied for bankruptcy, reporting significant financial problems. He indicated that he is borrowing money from his brother and wife to pay for his legal case.

*Mental Health History*
Mr. Jain has never been treated for mental illness or other concerns. He stated that he did not believe in psychopharmacology, and he did not believe that medication would help him during his current situation. Mr. Jain explained that his current distress is dependent upon his current circumstances, and psychotropic medication is not intended to treat acute and situational distress. He indicated that he was open to counseling services, stating, "It wouldn't hurt."

Mr. Jain stated that he has had two car accidents as an adult, but has suffered no head injuries. He witnessed death during his two-year work in Iran, but he denied trauma symptoms.

Samar Jain, son of Mr. Jain, stated that he did not note any concerns with his father's cognitive or emotional functioning in 2009 and 2010. However, Samar noted deficits in cognitive functioning beginning after he stopped working in July of 2012. He observed that his father was forgetting to maintain his car, blowing out a tire on his car because the pressure in the car tire was low in December of 2013. His diet had changed significantly, and his diet worsened while in prison, as he had experienced an allergy to soy. Mr. Jain also was observed to be mildly depressed and does not appear to understand the seriousness of his case. Samar also observed that his father was no longer recalling information that he typically knew, such as the fourth and fifth amendments to the constitution. Samar continues to visit once a week, and his father does not recall information he was told five minutes prior, and he is not paying attention during the conversation. Samar believed that the cognitive deficits are diet related.

Anna Phillip, Mr. Jain's ex-wife, stated that Mr. Jain was "frustrated and argumentative" during the time of his alleged crimes in 2009 and 2010. She did not understand why he had changed during that time, but she was concerned about a possible stroke or other health condition, as he was being treated for a heart condition (had a bypass and was taking medications). At the time, Ms. Philip believed that Mr. Jain's diabetes was not under control, and he was working excessive hours (6 AM to 10 PM). They were having relationship problems at the time, but he refused her request of receiving marriage counseling. She recalled an incident in 2008, when she called the police after Mr. Jain had an affair and hit her. Mr. Jain was arrested. Ms. Philip also observed that Mr. Jain was forgetful, and he has struggled to recall aspects of the legal hearings and what was discussed. Mr. Jain tends to repeat himself, and he would discuss aspects of the case, forgetting that he was recorded while in jail. Ms. Philip observed a significant change during the time he was in detention. However, she noted that Mr. Jain is "proud and denied having problems."

Mr. Jain was told the contents of discussion with his son and wife. He denied having an affair, stating that his wife was "paranoid." He indicated that he did talk with other women, but there were no sexual transgressions. He also denied having significant memory loss or problems in communicating with his family. He stated that his son believed he was having concentration difficulties; however, Mr. Jain simply did not respond to his son's comments because he disagreed with them.

*Medical Concerns and Medications*
Dona Ana County Detention Center Medical Notes indicated a hearing impairment in Mr. Jain's left hear. He was oriented. Mr. Jain reported prescriptions of the following medications in the past: 40 mg of Micardis (hypertension), 75 mg of Plavix (stent), 75 mg of Synthroid (thyroid), Folbee (neuropathy), 500 mg of Glucophage (diabetes), Lantus Solostar (Diabetes), Humalog (diabetes), and Crestor (hyperlipidemia). Mr. Jain demonstrated normal blood pressure (116/80), with blood sugar of 214 in April of 2014.

5

DACDC medical notes also indicated an allergy to iodine, sulfa drugs, and aspirin. He had been diagnosed with carpal tunnel neuropathy. He had no history of mental health treatment. He was prescribed 50 mcg of Levothyroxine, 100 units of NPH insulin, 75 mg of Plavix, 10 mg of Singulair (discontinued), 1000 mg of Glucophage, 50 mg of Doxycycline monohydrate, and ibuprofen was discontinued due to allergy.

Recent blood labs from the DACDC medical notes indicated a high $CO_2$ (31.9), high glucose (158), and high HGBA1C (7.4). Mr. Jain noted that this A1C level was relatively good for him, as he had been nine and above in the past. August blood work revealed a TSH level that was low (.237), low cholesterol (2.7), and low Uric Acid (.8). Medical staff were alerted to the low TSH level, a history of Mr. Jain receiving 75 mg of Synthroid, and lack of medication response to these two pieces of data by staff (continued treatment with 50 mg of Synthroid). Hyperthyroidism is a common condition of such measurements, which can present as depression or even manic symptoms.

*Legal History*
Mr. Jain has no legal history.

*Substance Abuse History*
Mr. Jain never drank alcohol prior to moving to the US, and he has a one drink (glass of wine) a week average consumption.

## MENTAL STATUS EXAMINATION
Mr. Jain wore a standard federal detention center uniform. He was well kempt and wore glasses. He was handcuffed to the interview room table. Mr. Jain expressed concern that other inmates were stealing from him and verbally abusing him. While he reported hearing loss in his left ear, there were no significant concerns with Mr. Jain's ability to communicate. He reportedly lost 25 pounds while in detention because of his diet consisting of only beans and rice with some canned vegetables. Mr. Jain reported concerns about his sugar levels due to his diagnosis of type II diabetes. He was sleeping four hours a night or less and had been exercising. Mr. Jain presented in a depressed and anxious mood. His affect was appropriate to the content of his speech. There was no evidence of hallucinations or illusions. Mr. Jain's thoughts were coherent and goal-directed, and there was no evidence of suicidal or homicidal ideation, or delusional content. Mr. Jain demonstrated adequate judgment, as he understood the purpose of the evaluation. His insight was limited, as he reported only acute anxiety related to his current legal circumstances. He communicated adequately with an Indian (Hindi) accent, and his speech was of a normal rate and tone. Mr. Jain's articulation and vocabulary, as well as knowledge of medical terms, showed at least average intellectual functioning. Long-term memory was adequate, as he recalled events from his life. Mr. Jain was oriented to person, place and time.

Mr. Jain appeared slightly disheveled during follow up meetings December 10th and December 12th, but he functioned adequately and recalled aspects of the evaluation previously discussed. There was no evidence of significant dysfunction or memory loss

6

from the previous meeting. Similarly, his thoughts were coherent, and he communicated adequately.

**Mini Mental Status Exam:**
Mr. Jain scored a 28 out of 30 points possible, scoring a t-score of 48 (average range). He showed poor functioning in attention and calculation, as he failed to perform mental mathematics accurately. The results suggest deficits with concentration.

**Basic Medical Screening:**
Mr. Jain reported diagnoses of hyperthyroidism and type II diabetes. He expressed concern that medical staff were only prescribing a third of the 150 mg of synthroid he had been prescribed for 15 years (for hyperthyroidism). He is reporting high sugar numbers in the evening after lunch, and he is prescribed insulin appropriately. His diabetes appears to be controlled. Mr. Jain also reported diagnoses of hypertension and high cholesterol. Mr. Jain reported having a 2 cm stent in his right coronary artery in 2008. His most recent visit to check on the stent was in 2011, and he is passed due for a follow up (two year check ups).

Mr. Jain wore glasses and has poor teeth due to his diabetic condition. He reported gingivitis, and he has had two teeth pulled while incarcerated. He reported migraine headaches since age 14, but he is no longer experiencing them. Dr. Jain was receiving testosterone and vitamin B12 injections prior to his arrest. He reported neuropathic numbness in his legs. He has 20 percent hearing loss in his left ear, and 15 percent loss of hearing in his right ear. Mr. Jain noted that his current A1C number of 7.1 was good for him.

Mr. Jain denied a history of dementia or Alzheimer's in the family. He reported a family history of heart disease and diabetes, however. His father suffered from heart disease, while his mother was diabetic. His father lived to age 92, while his mother lived to age 72. His younger brother died of coronary heart disease at age 38.

During a follow up session on December 12, Mr. Jain reported that his doctor increased the Synthroid medication, which had improved his overall feeling of health. He continued to have a poor diet, but his diabetes was controlled, scoring near 7 in A1C.

**CLINICAL FINDINGS:**
**TESTS ADMINISTERED:**
The Mini Mental Status Examination – Second Edition (MMSE-2)
Revised Competency Assessment Instrument (RCAI)
The Evaluation of Competency to Stand Trial – Revised (ECST-R)
Luria's Test of Bilateral Frontal Motor Functions
Montreal Cognitive Assessment (MOCA)
The Kaufman Short Neuropsychological Assessment Procedure (KSNAP)
The Minnesota Multiphasic Personality Inventory – 2nd Edition Restructured Format (MMPI-2RF)
Personality Assessment Inventory (PAI)

The Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV)

## RESULTS OF TESTING:
*Psychological Testing*
The **Minnesota Multiphasic Personality Inventory – 2nd Edition (MMPI-2)** is an objective self-report test that is a comprehensive measure of current psychological functioning and pathology. Mr. Jain provided an invalid profile, as his response style showed significant inconsistent responding (VRIN-r: t-score of 73), as well as a tendency to respond in a socially acceptable manner (L-r: t-score of 86). Mr. Jain's results showed evidence of paranoid and persecutory ideation, with no other clinical concerns. He also reported neurological complaints and significant stress, consistent to his current functioning. All other scales were in the average range.

The **Personality Assessment Inventory (PAI)** is a broad measure of mental illness and adaptive functioning. Mr. Jain provided an invalid profile, as his responses were inconsistent. Mr. Jain's tendency to provide inconsistent scoring suggests possible difficulties with comprehension of the items. He did acknowledge significant situational stress, and the results suggest a positive view of helping professionals and treatment. He denied drug and alcohol abuse, and there was no evidence of significant psychopathology or suicidal ideation.

*Neuropsychology Screening*
**Luria's Test of Bilateral Frontal Motor Functions** is an informal neuropsychological screening that examines signs of frontal lobe deficits. Mr. Jain passed all tests adequately, showing adequate functioning in executive functioning, inhibition, and fine motor coordination.

The **Kaufman Short Neuropsychological Assessment Procedure (KSNAP)** is a brief neuropsychological instrument testing for mental status, visual-spatial processing and language access, short-term memory and working memory, as well as reasoning abilities. Mr. Jain scored in the average range on the mental status subtest, receiving a perfect score of 10. He showed some minor difficulties with subtraction, although he was able to correct his error. Mr. Jain received a scaled score of 9 (37th percentile) on the Gestalt Closure subtest. He appeared distressed during the task, acknowledging that the test was "difficult."

Mr. Jain completed memory testing on the 12th of December, to determine if there was any significant change in cognitive functioning. He received a scaled score of 13, which is in the 84th percentile. This above average score suggests no significant cognitive concerns.

**Informal Language Assessment from Montreal Cognitive Assessment**
Mr. Jain was asked to provide words beginning with the letter "f" in a 60 second time frame. He was unable to provide 11 words during this time. His nine words were under the minimum required, suggesting word access difficulties.

8

Cognitive Assessment
The **Wechsler Adult Intelligence Scale– 4th Edition (WAIS-IV)** is a comprehensive test providing information regarding the client's overall Intelligence Quotient (IQ), as well as cognitive strengths and weaknesses. The test is divided into four composite scores: Verbal Comprehension (verbal reasoning, knowledge and vocabulary), Perceptual Reasoning (nonverbal reasoning, visuospatial processing, and fine motor skills), Working Memory, and Processing Speed.

Mr. Jain received a Full Scale IQ score of 84, which is in the Low Average range and the 10th percentile. His Verbal Comprehension composite score of 95, was a relative strength, and suggested average range verbal reasoning and fund of knowledge. He showed a relative weakness in vocabulary, with a scaled score of 6. Mr. Jain's score of 84 (14th percentile) on the Perceptual Reasoning scale, showed a relative weakness in nonverbal reasoning. Visual-spatial processing was in the average range. Mr. Jain's Working Memory was in the Low Average range, with a composite score of 89 (23rd percentile). Processing Speed was an 81 (10th percentile), showing relative weakness in processing visual information quickly.

Mr. Jain was right-handed and demonstrated adequate fine motor functioning and pencil grip. He was deliberate in performing timed tasks, and he showed confusion on more complex tasks. Mr. Jain was able to recall a list of seven numbers, which is average; however, he showed difficulties concentrating in recalling numbers backwards and in sequence. Mr. Jain was hasty in performing nonverbal tasks, responding to multiple-choice items quickly. After he was taught how to respond, he continued to have some difficulties, although he responded correctly to more complex items. Vocabulary was poor, as he did not know the meanings of simple two-syllable words.

Mr. Jain completed a memory subtest on December 12 to provide additional cognitive functioning data. He scored a scaled score of eight (Letter-Number Sequencing), which is in the low average to average range. He showed some basic difficulties recalling the instructions and implementing the multiple rules. Mr. Jain missed some items by one number of letter, and he showed good concentration overall.

*Competency Testing*
The **Evaluation of Competency to Stand Trial – Revised (ECST-R)** assists the evaluator in measuring competency via three subdomains: ability to consult with counsel, factual understanding of courtroom proceedings, and rational understanding of courtroom proceedings. The client was also administered portions of the Revised **Competency Assessment Instrument (RCAI)**, which provides information regarding knowledge and appreciation of courtroom proceedings, charges, and ability to work with an attorney.

*Factual Understanding of Charges and Courtroom Proceedings*
Mr. Jain stated that he was charged with 111 counts of "healthcare fraud." The evaluator discussed the various types of fraud with Mr. Jain, and he accurately defined each of the charges. For example, he stated that Unlawful Dispensing of a Controlled Substance

9

Resulting in Death was "giving them medication that they did not need it for any reason and killing them with the medication." He read the indictment and understood all aspects of the charge. He understood the bond that was placed on his release as well. Mr. Jain also discussed his fourth and Fifth Amendment rights. Mr. Jain also reported that he understood why the evaluation was requested. He indicated that he had been speaking in "codes" and another language in the attorney booths with his wife to avoid being understood, as he knew they were taping the conversations.

Mr. Jain indicated the he was charged with felonies. He understood the pleas available to him and their significance. Mr. Jain also demonstrated knowledge of the courtroom participants and their roles. For example, he stated that the judge "listens to both sides" and "gives instructions." He also stated that his attorney "is supposed to present my case with all the positive findings against the accusation with the proof and the expert testimony." Mr. Jain reported an understanding of his role as a defendant. He also demonstrated an understanding of the definitions of legal terms.

*Rational Understanding of Charges and Courtroom Proceedings*
Mr. Jain provided a rational account of the events leading up to his arrest, displaying adequate memory and knowledge of the patients for which he was accused. He provided a rational appraisal of the potential legal outcomes in his case. He stated that he was facing 20 years to life in prison, and he displayed a desire to achieve a positive outcome in his legal case. He was also rational as he discussed hypothetical legal scenarios. Mr. Jain denied having a mental illness and believed himself to understand the courtroom proceedings and charges against him.

*Ability to Assist Attorney*
Mr. Jain stated that his attorney was "Mr. Jeffrey Grass," and he stated that he selected his attorney due to viewing his testimonial on the Internet. He reported that his attorney has experience with medical health statutes, and thus he hired him. Mr. Jain has met his attorney on five occasions, and he reported that he believed his attorney "is going to fight for me and defend me." Mr. Jain indicated that he could assist his attorney by "helping him with the literature to support my treatment plan and can talk to the expert witness why I did things." Mr. Jain demonstrated rational expectations of his attorney, and he understood the confidential nature of his relationship with his attorney.

**CLINICAL SUMMARY**
Mr. Jain was charged with numerous counts of fraud and unlawful dispensing of a medication for acts committed allegedly in 2009 and 2010. He was referred for an evaluation due to concerns about significant problems in cognitive functioning due to health concerns, potentially as a result of untreated diabetes. Mr. Jain has had numerous health concerns, including diabetes, hyperthyroidism and heart disease requiring a stent. Mr. Jain was also working an excessive number of hours in 2009 and 2010. His family reported regressed behaviors since 2013, when he discontinued working. Mr. Jain has no history of substance abuse or mental health disorders.

Current testing showed Low Average to Average cognitive functioning in all areas. He performed adequately and was able to comprehend his situation and the purpose of the evaluation. However, given the level of professionalism required to be a neurologist and pain specialist, the lowered functioning is of concern. Mr. Jain reported having an IQ of 136 previously during his youth as a doctor. His current IQ score of 84 is a significant decrease and shows significant decline. Similarly, Mr. Jain displayed average functioning in memory and other areas of cognitive functioning. He was unable to provide a sufficient number of words in a one-minute period, which suggested some word access deficits as well. In addition, Mr. Jain demonstrated difficulties providing valid profiles for personality testing, as he was inconsistent. His inconsistent performance was likely due to comprehension or concentration difficulties.

Mr. Jain's deficits were not likely due to his diabetic condition, as his A1C numbers were better than what was typical (7.1). Concerns of hyperthyroidism being treated poorly with insufficient medication were addressed by DACDC staff, and Mr. Jain was performing at the same level after the appropriate medications were provided. There is no history of Alzheimer's or dementia in the family. Mr. Jain's lowered intellectual functioning could be due to age and depression, as he is experiencing significant stress at present given his current legal circumstances. However, his relative drop in performance is likely due to more than just concerns of stress and mood. This evaluator is concerned about the possibility of vascular dementia, given Mr. Jain's history of heart disease. While there was no evidence of a stroke previously, current testing might shed light on concerns in this domain.

Mr. Jain denied having a mental illness and personality results do not suggest the presence of a mental illness. He has been experiencing situation stress, which has endured for a significant period of time. Mr. Jain is listed below as having an Anxiety Disorder NOS, as he is experiencing symptoms of anxiety and depression that do not meet criteria for a full disorder, but have persisted beyond a period of six months. He refused counseling services, but he would likely benefit from support services at present.

**DIAGNOSIS**
Based on the Diagnostic Statistical Manual – 5th Edition (DSM-V)
Axis I:   Anxiety Disorder NOS
          Cognitive Disorder NOS
          Rule out Dementia, Vascular
Axis II:  No Diagnosis
Axis III: Diabetes, Hyperthyroidism, Hypertension, Heart Disease (stent), Migraines
Axis IV:  Environment, Primary Support Group
Axis V:   (GAF) 50

## CLINICAL OPINIONS
### a. Provide opinions as to diagnosis, prognosis, and whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and consequences of the proceedings against him, or to assist properly in his defense

As is noted above, it is my professional opinion that Mr. Jain is diagnosed with an Anxiety Disorder Not Otherwise Specified, as he is experiencing situational symptoms of anxiety and depression, which have persisted beyond six months, but which do not meet criteria for a significant or long-standing mental illness. He is also experiencing cognitive deficits in memory, word access, and overall intellectual functioning and reasoning, as his consistent scoring in the low average to average range on psychological and neuropsychological testing is significantly below what would be expected given his professional status. He does not appear to be experiencing full criteria for dementia at present, but vascular dementia is an area of concern that should be continually monitored. At present, Mr. Jain appears to be stable and there is no evidence to suggest that his cognitive functioning should worsen. Mental health functioning likely has stabilized, although he would benefit from appropriate diet for his medical condition of diabetes, consistent socialization and exercise, and counseling services. A psychiatric evaluation for temporary symptom relief could be provided as well.

With regard to his competence, it is my professional opinion that Mr. Jain is competent to understand the nature and consequences of the proceedings against him and to assist properly in his defense. He displayed adequate knowledge of the proceedings, as well as specific aspects of his charges. He also applied aspects of his legal knowledge in discussing specific aspects to his case. Mr. Jain collaborated effectively with the evaluator, showing appropriate social skills, mood, and communication. He demonstrated the capacity to work effectively with his legal counsel, as he understood how to assist his attorney and recalled essential aspects of his case.

### b. Whether the defendant was insane at the time of the offense charged.

It is my professional opinion that there is no evidence that Mr. Jain was insane at the time of the alleged offense. He demonstrated criminal responsibility, as there was no evidence of a long-term mental illness. At the time of the alleged crimes (2009-10), Mr. Jain was working excessively but was maintaining adequate cognitive and social functioning. Mr. Jain recalled specific details of his work, as well as dates of interactions. His son reported no concerns of cognitive or mental health functioning during the 2009-10 years. Mr. Jain's wife reported martial strife and arguments during this time, but there was no evidence of severe mental illness or concerns of cognitive dysfunction. His diabetes and other health conditions were relatively well controlled.

12

c. ***Any recommendation the examiner may have as to how the mental condition of the defendant should affect any sentence he may receive.***

Mr. Jain could benefit from counseling services to provide support through this stressful period of time, and to assist in controlling symptoms of anxiety and depression. He could also benefit from a psychiatric referral to discuss short-term medication to address such symptoms. His mood and mental health functioning are not such that they would require inpatient treatment or other services. However, his cognitive decline is of concern and should be monitored frequently. While he is currently stable and does not show significant decline between the evaluator's three visits with Mr. Jain, there is evidence of overall decline. He could meet criteria for dementia in the future and should be re-evaluated every six months or more often. His significant health condition of diabetes and hyperthyroidism are of significant concern and require extensive medical attention. His poor detention center diet and lack of exercise could be detrimental to both his physical and mental health. A specialized diet is tantamount to his stabilization, as is regular exercise and social interaction with family and others.

*Respectfully Submitted,*

Nick Barneclo, Ph.D.
Licensed Psychologist #1108